THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

VICTOR MANUEL CELORIO,

        Plaintiff,

v.                                          Case No.  1:11-cv-79-SPM-GRJ

GOOGLE INC., ON DEMAND BOOKS, LLC,
JASON EPSTEIN, AND JOHN DOES 1-3,

        Defendants.
_____,

## REPORT AND RECOMMENDATION

Pending before the Court is the Motion of Defendants On Demand Books LLC and Jason Epstein to Dismiss for Lack of Jurisdiction. (Doc. 22.)  Plaintiff has filed a response (Doc. 31) and therefore the motion is ripe for review.   For the reasons discussed below, the motion is due to be **GRANTED**.

## I.  BACKGROUND

Plaintiff Victor Manuel Celorio, proceeding *pro se*, brought this suit alleging infringement by Defendants of his patent for an "Electronic Bookstore Vending Machine" that is directed to "a method and system for producing books on-demand." (Doc. 13.).  In his Amended Complaint, Plaintiff alleges that On Demand Books LLC and Jason Epstein directly infringed his patent.  Plaintiff also asserts direct and contributory infringement claims against Google, Inc.  On Demand Books is a Delaware Corporation with its principal place of business in New York.  (Doc. 22, Exh. 5.)  Mr. Epstein, a resident of New York, founded the company in 2003 and is now Chairman.

(*Id.*, Exh. 6.)  On Demand Books sells the Espresso Book Machine, a machine that prints books on demand.  (Doc. 22, Exh. 5.)

Defendants On Demand Books and Mr. Epstein have moved to dismiss Plaintiff's Amended Complaint, contending that the action should be dismissed because the Court lacks personal jurisdiction under the Florida long-arm statute and constitutional due process requirements.  In support of the motion, Defendants have submitted the affidavits of On Demand Books CEO Dane Neller and Mr. Epstein.  (Doc. 22, Exhs. 5-6.)  Mr. Neller attests that On Demand Books does not transact any business in Florida: it has not sold products, entered into contracts, installed products, or advertised in Florida.  Further, On Demand Books is not registered to do business in Florida and has no assets in Florida.  (*Id.* at Exh. 5.)  Mr. Epstein attests that he is a resident of New York and has no relevant contacts with Florida.  (*Id.* at Exh. 6.)

In his response, Plaintiff maintains that he has alleged sufficient allegations in the Amended Complaint to support the exercise of personal jurisdiction over Defendants.  Plaintiff alleges that prior to the existence of On Demand Books, he corresponded with Mr. Epstein and had a business meeting with a partner of Mr. Epstein in Florida regarding his invention.  Plaintiff also contends that the contractual agreement between On Demand Books and Google to permit Google's electronic books to be printed through Espresso Book Machine owners support the Court's exercise of personal jurisdiction over On Demand Books and Mr. Epstein.  (Doc. 31.)

## II.  **DISCUSSION**

Plaintiffs initially must establish a *prima facie* case of personal jurisdiction over a nonresident defendant. "A *prima facie* case is established if the plaintiffs present

sufficient evidence to defeat a motion for a directed verdict."[1]  The burden then shifts to the defendant to file affidavits containing allegations that, if taken as true, show that the defendant's conduct does not make him or her amenable to service.[2]  Where a defendant submits such affidavits, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction -- unless the affidavits contain only cursory assertions that the defendant is not subject to jurisdiction.[3]  Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.[4]

   In determining whether the court has personal jurisdiction over a nonresident defendant the court employs a two-part analysis.[5]  First, the court must determine if jurisdiction can be obtained over the defendants under Florida's long-arm statute.[6] If so, the court must then decide whether the nonresident defendants have sufficient "minimum contacts" with Florida to satisfy the constitutional requirements under the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'"[7]  Even if jurisdiction is

---

[1] Cable/Home Communication Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11t Cir. 1990) (quoting Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988)).

[2] Acquadro v .Bergeron, 851 So.2d 665, 672 (Fla. 2003).

[3] Meier ex rel. Meier v. Sun Intern. Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002).

[4] See id.

[5] Horizon Aggressive Growth v. Rothstein-Kass, 421 F.3d 1162, 1166 (11th Cir. 2005).

[6] See id.

[7] Id.

found under Florida's long-arm statute, a separate review of the facts must be undertaken by the court to determine if the constitutional test is met.[8]

### A.  Florida's Long-Arm Statute

Because Florida law dictates the reach of the long-arm statute, this Court must interpret it in the same way that the Florida Supreme Court would.[9]  Therefore, this Court must strictly construe the statute,[10] and Plaintiff bears the burden of proving the facts which make the long arm statute applicable to the Defendants.[11]  Florida's long-arm statute provides for two types of personal jurisdiction: specific jurisdiction under §48.193(1), where a party's contacts with the forum relate to the cause of action and general jurisdiction under §48.193(2), where a party's contacts are unrelated to the litigation, but nonetheless are "continuous and systematic," such as owning property, running a business, or maintaining a bank account.

Plaintiff relies on §48.193(1) to argue that On Demand Books and Mr. Epstein have committed tortious acts–patent infringement–in the state of Florida, thus satisfying the requirements of the long-arm statute.  Plaintiff argues that the Google Books website's option to purchase print version of the book–by directing consumers to retailers who own Espresso Book Machines–is a "coordinated web-store" whereby On

---

[8] See Cable/Home Communication, 902 F.2d at 856 (quoting Venetian Salami Co. v. Parthenais, 554 So.2d 499, 500 (Fla. 1989)).

[9] Horizon Aggressive Growth, 421 F.3d at 1167.

[10] Madara, 916 F.2d at 1514.

[11] Restorative Prods., Inc. v. Mmar Med. Group, Inc., No. 94-1920 CIV-T-17A, 1995 U.S. Dist. LEXIS 18695, at *5 (M.D. Fla. Oct. 18, 1995); Bloom v. A. H. Pond Co., Inc., 519 F. Supp. 1162, 1168 (S.D. Fla. 1981).

Demand Books is offering for sale and selling products in Florida. These acts, Plaintiff alleges, infringe on his patent and are "tortious acts" for the purposes of Florida's long-arm statute. (Doc. 31.) On Demand Books argues that the long-arm statute cannot be invoked because no allegedly infringing sales have occurred in Florida and no Espresso Book Machines operate in Florida. (Doc. 22.)

Because the due process analysis is dispositive of the personal jurisdiction issue, the Court will assume for the purposes of the instant motion that the "tortious conduct" portion of §48.193(1) has been satisfied as to Defendants On Demand Books and Mr. Epstein.

**B.  Due Process**

Even if the conduct of On Demand Books and Mr. Epstein falls within Florida's long-arm statute, the Court must determine whether each individual defendant has sufficient minimum contacts with the forum to satisfy the due process requirements of the Fourteenth Amendment of the Constitution so that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice."[12]

The Eleventh Circuit utilizes a three-part test to decide whether there are sufficient minimum contacts:

> [f]irst, the contacts must be related to the plaintiff's cause of action . . . Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . Third, the defendant's contacts with the forum must be such

---

[12] Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

that the defendant should reasonably anticipate being haled into court there.[13]

Each defendant's contacts with the forum State must be assessed individually rather than simply viewing them collectively.[14]   As discussed above,  the minimum contacts alleged by Plaintiffs are directed to the cause of action and therefore relate to specific jurisdiction. Accordingly, the first part of the test - i.e. that the contacts are related to the cause of action - is established.  The Court will now address the contacts of On Demand Books and Mr. Epstein individually.

**On Demand Books**

Plaintiff's argument for personal jurisdiction is premised on the sales offered through the Google Books website.  Plaintiff explains in his opposition memorandum that computer users from around the world can access the Google Books web store, search for titles, and order print versions of the books.  Customers have the books printed on Espresso Book Machines located at various bookstores, libraries and other locations where Espresso Book Machines are in operation.  Plaintiff does not allege that any Espresso Book Machines operate in Florida, but alludes to On Demand Books' plans to install more of the machines, presumably in Florida.  (Doc. 31.)  In the system Plaintiff describes, Google Books offers to sell the product and the owner of the Espresso Book Machine fulfills the order.  On Demand Books' provides a directory page on its website that offers links to websites of third party owners of Espresso Book

---

[13] Posner v. Essex Ins. Co., 178 F.3d 1209, 1220 (11th Cir. 1999) (quoting Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1546 (11th Cir. 1993)).

[14] See Calder v. Jones, 465 U.S. 783, 790 (1984).

Machines. These third parties complete the transaction initiated at the Google Books site. (*Id.* at Exh. P.)

The instant case involves a personal jurisdiction analysis based on the Internet. The traditional principles guiding personal jurisdiction analysis are still applicable. District courts in the Eleventh Circuit have generally taken two approaches to personal jurisdiction analysis involving websites: the *Zippo*[15] sliding scale and a more traditional jurisdictional analysis.

The *Zippo* sliding scale is a website-tailored personal jurisdiction analysis that considers when a website can subject an entity to personal jurisdiction through assessing "the sufficiency of minimum contacts by measuring the degree of activity or passivity of the website."[16] The *Zippo* court reasoned, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet."[17] On one end of the *Zippo* spectrum, personal jurisdiction is proper where a defendant "enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet."[18] On the other end of the *Zippo*

---

[15] Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997).

[16] Roblor Marketing Grp. v. GPS Indus., 645 F. Supp. 2d 1130, 1151 (S.D. Fla. 2009). See also Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1219-20 (11th Cir. 2009) (discussing the criticism of Zippo but declining to opine as to its applicability); Alternate Energy Corp. v. Redstone, 328 F. Supp. 2d 1379, 1382 (S.D. Fla. 2004) (listing Florida cases applying the Zippo analysis); Miller v. Berman, 289 F. Supp. 2d 1327, 1335 (M.D. Fla. 2003) (applying the Zippo sliding scale analysis).

[17] Zippo, 952 F. Supp. at 1124.

[18] Id.

spectrum, personal jurisdiction is improper where the defendant merely posts information on a website accessible to users in foreign jurisdictions. In the middle of these extremes are interactive websites where users can exchange information with a host computer. In these cases, personal jurisdiction "is determined by examining the level of interactivity and the commercial nature of the exchange of information that occurs on the Web site."[19]

Paralleling a sentiment shared by other circuits, other district courts in the Eleventh Circuit have been more critical of the *Zippo* sliding scale, preferring a broader traditional jurisdictional analysis.[20]  Under this more traditional approach, district courts have included website interactivity in the personal jurisdiction calculus, but are often critical of the sliding scale's lack of guidance in cases where the defendant operates a middle ground website.[21]

Two district court cases involving facts similar to the instant case applied the traditional personal jurisdiction analysis to conclude that defendants were not subject to personal jurisdiction. In *Roblor Marketing Group, Inc. v. GPS Industries, Inc.*, the Southern District of Florida analyzed a website that provided marketing links to the independent sites of resellers and distributors, where the defendant's products could be purchased, but nothing could be purchased directly from the site. Other than the website, the defendant's contacts with the forum consisted of a single sale within the

---

[19] Id.

[20] See Instabook Corp. v. Instantpublisher.com, 469 F. Supp. 2d 1120, 1122 (M.D. Fla. 2006) (noting that "website interactivity may have some bearing on jurisdictional analysis, but it is not determinative"); Roblor, 645 F. Supp. 2d at 1154 (using the sliding scale analysis "as a guidepost" but maintaining a traditional personal jurisdiction analysis).

[21] See, e.g., Roblor, 645 F. Supp. 2d at 1154.

state. Applying traditional due process analysis, the *Roblor* court found that the website activity was insufficient to satisfy the due process requirement of minimum contacts.[22]

In *Instabook Corp. v. Instantpublisher.com*, the Middle District of Florida found that personal jurisdiction did not exist for a defendant whose contacts consisted of two sales within the state and a website that facilitated these sales through a process entailing "the downloading of software, the transmission of a manuscript to the Defendant, and the shipment of the published books through the mail."[23] The *Instabook* case involved the same technology at issue in the instant case and was brought by Plaintiff's former company against a website that was alleged to have published books for two Florida residents. The *Instabook* court held that even though the defendant had a commercial, interactive website, the two alleged sales in Florida were not sufficient to support the court's exercise of personal jurisdiction over the defendant.[24]

In the instant case, On Demand Books' website–which is accessible to all internet users and may also be visited by a Google Books customer seeking to print a book–does not support this Court's exercise of personal jurisdiction over On Demand Books under either the sliding scale or traditional analysis. Consumers cannot purchase products on the On Demand Books website. While they can click on links that take them to other websites to purchase books, this is insufficient to support minimum contacts. As the Middle District of Florida recently noted,"the fact that the

---

[22] Id.

[23] Instabook, 469 F. Supp. at 1126.

[24] Id. See also Zamora Radio, LLC v. Last.fm Ltd., No. 09-cv-20940, 2011 WL 2580401, 2011 U.S. Dis. LEXIS 69101 (S.D. Fla. June 28, 2011) (rejecting plaintiff's contentions of personal jurisdiction over defendant where website at issue allowed visitors to sign up for a newsletter, listen to live audio, and post comments).

website of a company that sells products in Florida can be reached via a link on Defendants' website is too narrow a thread on which to find meaningful 'contact' for the purposes of due process."[25]  On Demand Books' website activity is not purposefully directed at Florida, and the presence of links to book machine owners is insufficient to establish meaningful conduct.  The website's tools for searching for books and receiving marketing information likewise do not rise to the level of meaningful contacts.  (Doc. 22, p. 5.)  Accordingly, On Demand Books' website does not create the minimum contacts necessary to satisfy the Due Process clause.

Nor does On Demand Books' contractual relationship with Google provide a basis for this Court to exercise personal jurisdiction over On Demand Books.  Personal jurisdiction must be established separately for each Defendant, and while Google has an agent in Florida and does business in Florida, jurisdiction for On Demand Books cannot be established based on Google's contacts with the forum.  Plaintiff contends that On Demand Books is subject to personal jurisdiction by virtue of its business relationship with Google, which Plaintiff characterizes as a partnership.  Defendants Google and On Demand Books have agreed to an independent contractor relationship, and to extend jurisdiction in Florida to any company that contracts with Google, an international corporation, would thwart the due process protections that underlie the personal jurisdiction analysis.

**Mr. Epstein**

Plaintiff also asks the Court to exercise personal jurisdiction over Mr. Epstein, alleging that Mr. Epstein has sufficient contacts with Florida.  In support of this

---

[25] <u>Dynetech Corp. v. Leonard Fitness, Inc.</u>, 523 F. Supp. 2d 1344, 1348 (M.D. Fla. 2007).

contention, Plaintiff alleges that in 2000, prior to the existence of On Demand Books, Mr. Epstein's business partner, Michael Smolens, met with Plaintiff in Florida regarding the invention at issue. Plaintiff alleges that this business meeting was followed by phone calls and e-mails among Mr. Epstein, his business partner, and Plaintiff. Plaintiff contends that Mr. Epstein called him and invited him to New York for a business meeting. (Doc. 31.)

      The contacts alleged by Plaintiff do not rise to the level of the minimum contacts required to comport with the Due Process Clause. A single telephone call several years ago inviting Plaintiff to New York is insufficient. Furthermore, the e-mails provided by Plaintiff in Exhibit T are e-mails from Michael Smolens and Frank Lehner. Mr. Epstein appears to have been copied on some of the e-mails, but Plaintiff does not provide e-mails from Mr. Epstein. Although Plaintiff attempts to impute Mr. Smolen's contacts in Florida to Mr. Epstein, there is no evidence in the record of their alleged partnership, and the e-mails from Mr. Smolens only once references Mr. Epstein, regarding a telephone conversation between Mr. Smolens, Mr. Epstein and "Victor." (Doc. 31, Exh. T.) Plaintiff also argues that personal jurisdiction over Mr. Epstein is warranted for the same reasons jurisdiction over On Demand Books is proper. As discussed in detail above, there are not sufficient contacts between On Demand Books and Florida to exercise personal jurisdiction; this argument also fails.

      Even if Plaintiff could establish minimum contacts, exercise of jurisdiction over On Demand Books and Mr. Epstein would offend traditional notions of reasonableness and fairness. The Supreme Court articulated a five-factor test in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985), to determine whether jurisdiction is reasonable and

fair: 1) "the burden on the defendant;" 2) "the forum State's interest in adjudicating the dispute;" 3) "the plaintiff's interest in obtaining convenient and effective relief;" 4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and 5) the "shared interest of the several States in furthering fundamental substantive policies."[26]

Weighing the five *Burger King* factors, a Delaware limited liability company with no ties to Florida save a website that can be accessed in Florida tips the analysis against the reasonableness of exercising jurisdiction.[27] The burden on Mr. Epstein, a New York resident, to defend the suit in this Court would be significant. As to the second and third factors, although Plaintiff's interest in resolving the dispute may be significant, Florida's interest in the adjudicating the dispute is minimal.[28] "[T]he mere fact that Defendant's website is accessible to Florida residents is not enough to give Florida a significant interest in adjudicating the matter."[29] None of the remaining factors suggest any reason why exercising jurisdiction would be necessary to preserve reasonableness and fairness. Accordingly, On Demand Books and Mr. Epstein's challenges to personal jurisdiction are due to be **GRANTED**.

### Jurisdictional Discovery

Plaintiff asserts that he has a right "to conduct discovery to elicit further

---

[26] Burger King, 471 U.S. at 477.

[27] See Zamora Radio, No. 09-cv-20940, 2011 WL 2580401 at *10, 2011 U.S. Dis. LEXIS 69101 (S.D. Fla. June 28, 2011).

[28] See, e.g., Response Reward Systems v. Meijer, Inc., 189 F. Supp. 2d 1332, 1339 (M.D. Fla. 2002).

[29] Id.

jurisdictional facts." (Doc. 31, p. 3.) He offers no other support for his request and fails to explain what he thinks he could or should be discovered. Plaintiff has failed to show that the exercise of personal jurisdiction over Defendants On Demand Books and Mr. Epstein would be proper, and there is no genuine dispute over jurisdictional facts.[30] Accordingly, Plaintiff's request for jurisdictional discovery is due to be **DENIED**.

### III.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that:

1. Defendants On Demand Books and Jason Epstein's Motion to Dismiss for Lack of Jurisdiction should be **GRANTED**.

2. Plaintiff's request for jurisdictional discovery should be **DENIED.**

**IN CHAMBERS** in Gainesville, Florida, on April 30, 2012.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**
**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

---

[30] See, e.g., Instabook, 469 F. Supp. at 1127.