IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

VICTOR MANUEL CELERIO,

     Plaintiff,

v.                                      CASE NO. 1:11-cv-79-RV-GRJ

GOOGLE, INC., et al.,,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court upon the parties' cross-motions for summary judgment, Docs. 104 & 109.[1]  The parties have responded to the cross-motions, Docs. 120 & 123, and the motions therefore are ripe for review.  For the reasons discussed below, the undersigned recommends that Defendant's Motion for Summary Judgment is due to be **GRANTED**, and that Plaintiff's Motion for Summary Judgment is due to be **DENIED.**

## I.  BACKGROUND

Plaintiff initiated this case by filing a *pro se* complaint against Google, Inc. ("Google") claiming direct and indirect infringement of a patent for an "Electronic Bookstore Vending Machine." The Court already has entered an order construing the claims. Docs. 151 & 153.  While this case has been unreasonably complicated because Plaintiff has been proceeding *pro se* and has a basic but not full understanding of the legal issues, the patent in this case is very simple and straight forward. The patent

---

[1]Plaintiff filed two pleadings styled as motions for summary judgment, but a review of Doc. 70 reflects that it is in substance a response in opposition to Defendant's motion for summary judgment.

covers a machine that will format and print, and then glue and bind a book for a retail consumer.

Google was joined in this action because of its relationship with On Demand Books LLC ("On Demand Books"), which is a business engaged in making a machine that prints and binds books. On Demand Books' printing machine is known as the "Espresso Machine." On Demand Books was dismissed from this case more than a year ago because the Court did not have personal jurisdiction over On Demand Books. The relationship between Google and On Demand Books is as follows. Pursuant to a contract with On Demand Books Google permitted On Demand Books to access PDF Downloads on Google's servers, which PDFs contained images scanned from the pages of public domain books.

To better understand Google's involvement (or lack thereof) in the digital book publishing business and its relationship with On Demand Books a brief chronology is necessary.

Google's involvement with on-line book services began in 2002, when Google began to look into the idea of scanning large numbers of books. Doc. 105, Ex. 20. In October 2004 Google Print was launched. *Id.* Although the name of the service was Google Print, it was not a printing service but rather a service that provided digitized books available to the public. *Id.* ¶ 4. Eventually, in October 2005 Google changed the name from Google Print to Google Book Search. *Id.* Google Book Search permitted users to download PDFs of public domain books. *Id.* ¶ *12.* Notably, the PDF Downloads contained only scanned images of the books content and not their electronic text. Doc. 23, Ex. A. This distinction is important in this case because Plaintiff claims that his

patent includes downloading the electronic text – thus allowing the font and formatting to be changed – rather than simply a picture of the page as is the case with a PDF.

Google's relationship with On Demand Books began in 2009 when On Demand Books approached Google to obtain access to Google's library of public domain books so that On Demand Books could make those books available to its customers for printing on the Espresso Book Machine.

Consequently, later in 2009 Google and On Demand Books entered into an agreement the terms of which required On Demand Books to pay Google a negotiated amount for each PDF Download it accessed from Google's servers and then printed on one of On Demand Books' Espresso Machines. *Id.* Ex. 3. Importantly, pursuant to the contractual relationship between Google and On Demand Books Google does not restrict or control how On Demand Books prints or thereafter binds the PDFs of Google's public domain books. *Id.* Thus, in its simplest terms Google's limited involvement is that it permits On Demand Books to access Google's vast library of public domain books for a fee and then On Demand Books can print, bind or otherwise print and use the books through the use of the Espresso Machine.[2] The sole focus of Plaintiff's claim of indirect infringement is upon the fact that Google provides access on its servers to its PDF book library so that On Demand Books can access the PDF books, download them and then print them on its Espresso Machine. Thus, Plaintiff's allegations in this case relate to the Espresso Machine printing and binding a physical book reproduction from a PDF Dowload accessed by On Demand Books from Google's

---

[2] For approximately six months Google also had an Espresso Machine at its Mountain Valley offices for demonstrative use. It was used only to print books for Google employees and visitors to read. During this limited period of time Google did not make any commercial use of the Espresso Machine. *Doc. 105,* Ex. 28, ¶ 3.

servers. (The "Accused Combination.") The allegations of direct infringement arise from Google's use of a demonstration Espresso Machine at Google's headquarters for about six months.

While Plaintiff's Amended Complaint , Doc. 13, is not a model of clarity, Plaintiff purports to bring claims against Google for: contributory infringement (Count I) or alternatively inducing infringement; and direct infringement (Count II).  As discussed in detail below, Plaintiff's claim for contributory infringement fails because the PDF Downloads of Google's book library have substantial noninfringing uses such as simply being read on a computer and then printed on paper. Alternatively, Plaintiff's theory of inducing infringement also fails because Google did not know how the Espresso Machine works or whether the Espresso Machine performs all of the steps required by the patent claims. Moreover, under the agreement with On Demand Books Google does not restrict or control how On Demand Books prints or binds the PDF images of the public domain books it downloads from Google's servers. Lastly, Google is not liable for direct infringement because Google does not make machines that will format, print, glue and bind books – all of which are critical elements of the claims of Plaintiff's patent.

In short, Plaintiff's theories and claims in this case against Google have no evidentiary or legal support and fail even liberally construing the evidence and arguments in favor of Plaintiff.

## II.  SUMMARY JUDGMENT STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-moving party." *Samples on Behalf of Samples v. Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). "In determining whether summary judgment is appropriate, [the Court is] required to draw all reasonable inferences in favor of the non-moving party, not all *possible* inferences." *Horn v. United Parcel Services, Inc*. 433 F. App'x 788, 796 (11th Cir. 2011) (emphasis added)[3].

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

The Eleventh Circuit has noted that

[i]t is well settled that "after adequate time for discovery and upon motion, [summary judgment is appropriate] against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, in response to a motion for summary judgment, a nonmoving-plaintiff must present evidence in support of his

---

[3] Although unpublished opinions are not binding on this Court, they are persuasive authority. 11th Cir. R. 36-2.

allegations sufficient to raise a genuine issue of material fact regarding each element of his claim. As established in *Celotex,* it is not necessary for the party moving for summary judgment to introduce any evidence at all in order to prevail on his motion. Rather, in cases in which the nonmoving party will bear the burden of proof at trial, the movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence or risk having judgment entered against him. *Id.* Where the nonmoving party fails to present such evidence, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

*Maxi-Taxi Of Fla., Inc. v. Lee County Port Auth., 3*01 F. App'x 881, 885 (11th Cir. 2008). Where the nonmoving party bears the burden of proof, he must offer more than a mere "scintilla of evidence" in support of his position. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

## III. DISCUSSION

### A. The Patent

This case concerns U.S. Patent No. 6,012,890 entitled ELECTONIC BOOKSTORE VENDING MACHINE (the "'890 Patent"), which was issued on January 11, 2000 to InstaBook Corporation, ("InstaBook"), a company owned by Plaintiff before the company went out of business. Doc. 105, Ex. 9. The Abstract for the '890 Patent describes the invention as "a method and system for producing books on-demand. An electronic bookstore in accordance with the subject invention can receive an electronic text file of a book and then print and bind a copy of the book." *Id.* The' 890 Patent includes 120 claims with 18 drawings. Although Plaintiff claims that there is no way to make a book on demand except by using Plaintiff's patented method, Plaintiff concedes that he did not invent the electronic bookstore or the electronic book machine.

Plaintiff also obtained another patent the year after the 890 Patent was issued. On April 10, 2001, U.S. Patent No. 6,213,703 (the "'790 Patent") issued to InstaBook, entitled "ELECTRONIC BOOKSTORE VENDING MACHINE." The '790 Patent is relevant to this case because during prosecution the Patent Office found the 19 claims in the '790 Patent were not patentably distinct from the claims of the '890 Patent. Doc. 105, Ex. 12. Plaintiff ultimately filed a terminal disclaimer agreeing that the claims in the '790 Patent would not last any longer than the claims in the '890 Patent. Notably, at the request of another party, the Patent Office reexamined the '790 Patent and concluded that 17 of the 19 original claims in the '790 Patent were invalid. *Id.* Ex. 14. Ultimately, after the decision of the Examiner was appealed to the Board of Patent Appeals and Interference, the Board held that all 19 claims of the '790 Patent were invalid. *Id.* The significance of this decision is that because the 19 claims in the '790 Patent were determined to be patentably indistinct from the claims in the '890 Patent, there is a credible argument that the Plaintiff's '890 Patent may have become invalid after Plaintiff filed this suit.[4] Nonetheless, even if the '890 Patent is not now invalid, Plaintiff's claims against Google for indirect and direct infringement have no merit. The Court will briefly address in turn each of Plaintiff's purported claims.

**B.** **Plaintiff's Claims That Google Contributed to or Induced Infringement Have No Merit**

A claim for induced infringement is provided for in 35 U.S.C. § 271(b). Pursuant to this section, "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). The "alleged infringer must be shown ... to have

---

[4] The /complaint in this case was filed on April 27, 2011 and the board of Patent Appeals and Interference held that all 19 claims of the '790 Patent were invalid on March 28, 2012.

*knowingly* induced infringement," not merely knowingly induced the acts that constitute direct infringement. *DSU Med. Corp. v. JMS Co.*, 471 F. 3d 1293, 1306 (Fed. Cir. 2006). Such intentional encouragement requires the defendant to have engaged in some affirmative act and not simply failed to take steps to prevent infringement. *Tegal Corp. v. Tokyo Electron Co.*, 248 f. 3d 1376, 1378 (Fed. Cir. 2001). Importantly, a claim under Section 271(b) requires a showing that the activity induced by the defendant constitutes direct infringement.

Claims for contributory infringement are also covered un 35 U.S.C. § 271. Pursuant to § 271(c), whoever sells a component of a patented machine for use in practicing a patented process that does not have a substantial noninfringing use shall be liable as a contributory infringer. Unlike induced infringement contributory infringement does not require an allegation of intent. The statute requires only knowledge that an activity caused infringement. *See, Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F. 2d 1464, (Fed. Cir. 1990)("proof of a defendant's *knowledge* , not *intent*, that his activity cause infringement was necessary to establish contributory infringement"(emphasis in original)). However, in addition to showing knowledge to establish contributory infringement liability, the patentee must show that there are no substantial non-infringing use for the supplied component. *Toshiba Corp. v. Imation Corp.,* 681 F. 3d 1358, 1362 (Fed. Cir. 2012).

Turning first to the issue of contributory infringement, there are two fundamental flaws in Plaintiff's claim for contributory infringement. First, Plaintiff has failed to demonstrate that Google had knowledge that supplying PDF files to On Demand Books

infringed the '890 Patent. Secondly – and even assuming Plaintiff could demonstrate that there is genuine issue of a material fact as to whether Google had knowledge – there is no issue that Plaintiff has not and cannot show that the PDF files supplied by Google to On Demand Books do not have other substantial noninfringing uses.

With regard to knowledge, the only argument advanced by Plaintiff that Google had knowledge relates to a September 27, 2005 letter allegedly sent by InstaBook to Eric Schmidt of Google, copies of which allegedly were copied to Larry Paige and Sergey Brin, the co-founders of Google. Doc. 105, Ex. 21.  Reliance upon the 2005 letter as evidence that Google had knowledge is problematic for several reasons and on this record fails to raise a genuine disputed issue of material fact.

First, the letter suggests that Google Print "may be infringing one or more of InstaBook's patents, including the patent-in-suit. The letter, however, states that the claims in the patent "are tied directly to a method of performing content searches on books, so that customers can find the specific book they are looking for, order it, download it, and print and bind it at the point of sale in a matter of minutes." *Id.* It is undisputed that Google Print *was not* a printing service but rather a service that provided digitized books available to the public. Thus, when the 2005 letter was sent Google was not engaging in activities that even arguably would constitute infringement and the letter was sent more than 4 years before Google entered into the agreement with On Demand Books.

Second, while Plaintiff has produced a copy of the September 27, 2005 letter there is no evidence in the record documenting that the letter was received by Brin or

Paige. Indeed, the record contains declarations from Paige, Brin and Schmidt that they do not have any recollection about the 2005 letter nor any direct knowledge about InstaBook, plaintiff or the patent-in-suit. Doc. 70, Exs. 2-4. Plaintiff elected not to take a 30(b)(6) deposition of Google relating to the 2005 letter and therefore the only evidence of record is a copy of the letter (produced by Plaintiff) and Google's statement that they are not denying the letter was received by someone. Regardless, the letter did not place Google on notice that doing business four years later with On Demand Books would or could infringe Plaintiff's patent, particularly in view of the fact that Plaintiff admits that in 2005 Google was not infringing his patent. Doc. 105, Ex. 19, p. 37:23-38.

The same reasoning applies to the several email exchanges in 2007, between Plaintiff and Manuel Tamez, a Google employee. Again, Plaintiff concedes that at the time he exchanged emails with Mr. Tamez, Google was not infringing. The Google employee solely responsible for the print-on-demand project was Larissa Fontaine. Plaintiff elected not to take any discovery from Ms. Fontaine. The record, however, contains a detailed declaration from Ms. Fontaine. Doc. 105, Ex. 20. In her declaration Ms. Fontaine details Google's history of Google Books. Ms. Fontaine was the Google employee who spearheaded Google's effort with On Demand Books. In addition to recounting the relationship with On Demand Books, which did not begin until 2009, Ms. Fontaine avers that prior to the filing of this case, she had never heard of the '890 Patent, Mr. Celerio or InstaBook Corporation. There is no other evidence of record refuting this assertion. This averment is important because in the absence of any other evidence of record, Plaintiff has not demonstrated that Google had knowledge that

entering into an agreement with On Demand Books (the challenged activity in this case) caused or would cause infringement. Simply put, Plaintiff's claim for contributory infringement fails because he has not demonstrated on this record that Google had knowledge that doing business with On Demand Books might cause infringement.

Alternatively, even if the mere fact that 2005 letter was sent would be sufficient to raise an issue of fact on the issue of knowledge (which it does not), Google is still entitled to summary judgment on Plaintiff's claim of contributory infringement because contributory infringement cannot be based upon the sale of a "staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c). Thus, to establish contributory infringement, Plaintiff must show that there are no substantial non-infringing uses. *Toshiba Cor.* 681 F. 3d 1358, 1362. Google's conduct challenged by Plaintiff is the authorization to On Demand Books to obtain the PDF Downloads from Google's book library and then print them. These PDF downloads, have been available for years to the public before Google entered into an agreement with On Demand Books. There is no question that the PDF Downloads can be read on a PC, and printed on a standard printer attached to the PC without infringing. As such, it is undisputed that Google's PDF Downloads can be used without printing and can be used without being bound into a book. Plaintiff's claims under the '890 Patent do not cover simply reading or printing books electronically but rather "receiving, printing and binding a copy of the book." Consequently, because the PDF Downloads have substantial other non-infringing uses, which are not "unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental" the PDF Downloads constitute an article of commerce suitable for non-infringing use and thus Plaintiff cannot establish

that Google engaged in contributory infringement by authorizing On Demand Books to access and download Google's PDF book files.

Plaintiff's argument that the PDF Downloads loose their status as a staple or article of commerce when the PDF Downloads are transferred to the Espresso Machines, misinterprets the statute as written and would subject any person who provided an object to a potential infringer to be liable for contributory infringement. That is not the law. Objects used in an infringing combination only subject a party to contributory infringement where the object does not have a substantial non-infringing use. Where, as here, the article can be (and actually has been) used in other substantial non-infringing uses, simply providing the article to another who uses it to infringe does not give rise to contributory infringement.

With regard to Plaintiff's claims that Google induced infringement, Plaintiff's theories fail for several reasons.

Plaintiff's theory that Google induced infringement is based upon Plaintiff's assertion that Google actively induced infringement "by promoting and encouraging purchase of electronic books to [be] printed on demand" by Espresso Machines, and by virtue of Google Books' ability to provide searches of indexed book content.

The flaw in Plaintiff's argument is that Plaintiff ignores that he has to demonstrate that Google actually knew that the actions it induced infringed the '890 Patent. To induce infringement is it not enough that an actor induce an act that is patent infringement, the actor must know that the induced acts constitute patent infringement. *Global-Tech Appliances, Inc. v. SEB SA*, 131 S.Ct. 2060, 2068 (2011); *see also*, *Spencer v. Taco Bell Corp.*, Case No. 8:12-cv-387-T-23TGW (Merryday, J.)(M.D. Fla.

Oct. 22, 2012). The Supreme Court in *Global-Tech* made clear that inducement to infringe requires that the actor must know, or be willfully blind to the fact, that the induced acts constitute infringement. *Id.* at 2068. Consequently, Plaintiff must demonstrate that Google knew that delivering the PDF Downloads to On Demand Books would infringe Plaintiff's patent. Plaintiff has failed to do so on this record.

Conspicuously absent from this record is any evidence of even one person at Google who worked on any print-on-demand project, that has any knowledge of InstaBook, Plaintiff or the patent-in-suit. The absence of such evidence may be because there truly is no individual with knowledge at Google or because Plaintiff did not depose any employees that Google identified as being knowledgeable about Google's relationship with On Demand Books. While the Court is well aware that Plaintiff is proceeding *pro se* – and thus the Court has afforded a very generous and liberal interpretation to Plaintiff's arguments and theories – Plaintiff, nonetheless, in opposing a motion for summary judgment must come forward with some evidence. Plaintiff has failed to do so.

In contract, Google has submitted evidence that it did not have any knowledge that entering into an agreement with On Demand Books would or could constitute infringement. Google has submitted the declaration of Larissa Fontaine, the Google employee solely responsible for Google's relationship with On Demand Books, who avers that she never heard of InstaBook, Plaintiff of the patent-in-suit.

In addition to the fact that there is no evidence that Google knew entering into an agreement with On Demand Books constituted infringement, there is no evidence that

the actions of On Demand Books was induced by Google. Rather, it is undisputed that On Demand Books was selling its Espresso Machine since at least 2007, well *before* it did business with Google. Moreover, Plaintiff has not produced any evidence concerning On Demand Book's sales before or after Google entered into an agreement with On Demand Books.

Most notably, however, because there is uncontroverted evidence that Google does not know how On Demand Books' Espresso Machine works, Plaintiff cannot demonstrate that Google knew its actions induced infringement.[5]

Lastly – and independently of the shortcomings in Plaintiff's claims for contributory or inducement of infringement –  it is well settled that "[t]here can be no inducement or contributory infringement without an underlying act of direct infringement." *Linear Tech Corp. v. Impala Linear Corp.,* 379 F. 3d 1311, 1326 (Fed. Cir. 2004).  Therefore, because, as discussed below, the accused combination does not fall within the scope of the claims in the '890 Patent  there is no direct infringement and therefore any claims by Plaintiff of contributory or inducement to infringe also fail.

## C.  Plaintiff Has Failed to Prove Direct Infringement

In order to determine whether there has been infringement the Court engages in a two part analysis. The Court first must determine the scope and meaning of the patent claims and then compare the properly construed claims to the infringing device. *Cybor Corp. v. FAS Techs., Inc.,* 138 F. 3d 1448, 1454 (Fed. Cir. 1998)(*en banc*). The

---

[5] The Court recognizes that an Espresso Machine was located at Google's headquarters for a six month period. The Espresso Machine, however, was not used for commercial purposes but rather was available for use by volunteers to use to print reading material at lunch and for visitors. The fact that the Espresso Machine was located there does not mean Google learned how the device worked, other than to turn it on and off.

Court already has determined the proper construction of the claims in the Court's report and recommendation addressing the parties *Markman* briefs. Doc. 151. The report and recommendation was adopted by the District Judge. Doc. 153.

Turning to the patent claims in issue there are fifteen independent claims, asserted by the Plaintiff.[6]  In analyzing the merits of Plaintiff's claim of direct infringement the Court will focus on the independent claims only because if there is no infringement of an independent claims it follows that there is no infringement of a dependent claim.

Twelve of the independent claims[7] require a means for or step of "formatting." The '890 Patent says that its method of formatting allows "the reformatting of the size and type of fonts ... [and] for large type formatting." In resolving this issue it is important to consider exactly what is involved in providing the PDF Downloads. As previously discussed, the PDF Downloads contain *only* the images of the pages of previously printed books. As set forth in detail in the declaration of Jeff Breidenbach –  a member of Google's technical staff who works on Google Books' image processing and acquisition – the public domain files that Google Books provides contain no symbolic test layer or fonts. Doc. 23, Ex. 1.  Rather, the PDF files contain only raster images from scanned pages, and do not contain text obtained through optical character recognition ("OCR"). With regard to the images provided to print-on-demand providers, such as On Demand Books, there are only minor differences from the PDF files that can be downloaded from the Google Books website. Those differences include such things as

---

[6] These claims include claims 1, 5, 6, 14, 20, 21, 25, 26, 33, 37, 38, 54, 61, 68 and 75.

[7] Claims 1, 5, 6, 14, 201, 21, 25, 26, 54, 61, 68 and 75.

the removal of pages, such as covers, or the addition of pages at the beginning, such as blank pages or introductory Google front matter. *Id., p. 2, ¶6.* Other than these minor differences – which have nothing to do with formatting – the bottom line is that Google provides only images of pages of public domain books, which are not formatted (other than as it appears on the page of the printed book). Thus, the PDF Downloads provided by Google do not provide any formatting and thus do not include a means for, or a step of "formatting as required by twelve of the independent claims.

Plaintiff contends that the PDF Downloads are capable of formatting by suggesting that the PDF Downloads contain searchable text. This argument, however, misses the point. The issue is whether Google does any formatting of the PDF Downloads or whether the PDF Downloads provide a means for formatting and not whether PDF files in general contain searchable text. The evidence is uncontroverted that Google provides only images or pictures of the book pages, which are then printed by print-on-demand providers, such as On Demand Books. Indeed, Plaintiff distinguished in the patent application for the '890 Patent the then known method of using a raster image of the pages of a book to copy a book which already has been printed. Doc. 105, Ex. 9, Col. 2, lines 12-20. Coping the pages of an already printed book by converting them to PDF files is precisely the method used by Google and the method Plaintiff expressly stated was not part of his invention.

Accordingly, because Google has established that the PDF Downloads it provides to print-on-demand book providers do not provide any formatting or a means for formatting, Google's Accused Combination does not infringe the "Formatting Claims" and therefore Google is entitled to summary judgment on this issue.

Turning next to whether the PDF Downloads provide a "paper sheet receiving means" – an element of three independent claims[8] – there is no dispute on this issue. Google does not provide a tray that holds smaller sheets of paper, after they have been cut from a larger sheet, until the printer finishes printing all of the pages of the book. Thus, there is no evidence that Google infringes this element of the three claims and therefore Google is entitled to summary judgment on this issue.

The same applies to the element that the '890 Patent provides for a cutting means, or a step of "cutting said paper sheets into smaller sheets," an element of ten of the independent claims.[9] There is no evidence that Google's Accused Combination separates a paper sheet into smaller sheets that have a book page printed on each side.

Similarly, Google does not infringe any label, notching or signaling claim, an element of a number of the independent claims of the '890 Patent.[10] There is no evidence offered by Plaintiff suggesting that Goolge's Accused Combination notches, labels, or signals as those terms are construed in the claims of the '890 Patent.

Lastly, as construed by the Court,[11] the "glueing means" in the '890 Patent is limited to using cold glue. Plaintiff concedes that there is no evidence in this case that

---

[8] Claims 33, 37 and 38.

[9] Claims 1, 14, 20, 21, 60, 67, 93, 102 , 111, and 117.

[10] Claims 2, 22, 34, 41, 48, 76, 82, 92, 100, 109, 115 and 116 require a "notching means" or a "notching step", while claims 5, 25, 37, 54, and 68 require a "labeling means for attaching a spine cover label to the spine of the book. Claims 1, 5, 6, 14, 20, 54, 61 , 68 and 75 require "printing the book's content on paper sheets upon receipt of a signal from said receiving means."

[11] See, Doc. 151, pp 15-19.

the Accused Combination uses cold glue[12] and therefore summary judgment is due to be granted in favor of Google on this claim.

For these reasons,[13] the Court has no problem in readily concluding that no reasonable jury could find that the claims of the "890 Patent are found in Google's Accused Combination and therefore summary judgment is due to be granted in favor of Google with regard to Plaintiff's claims of direct infringement.[14]

## D.  Invalidity

Lastly, Google requests summary judgment in its favor that the claims of the '890 Patent are invalid. Google argues in summary fashion that the claims of the '890 Patent are invalid because the "formatting " claims are indefinite and because the claims of the '890 Patent are anticipated by the prior art.

With regard to the defense that the claims are indefinite, the determination of whether a claim is indefinite and in turn invalid under 35 U.S.C. § 35, ¶ 2, is a question

---

[12] Doc. 105, Ex. 19, 103:17-104:14

[13] In addition to the fact that Plaintiff cannot establish that Google's Accused Combination infringed any of the independent claims of the '890 Patent, Plaintiff cannot demonstrate that he is entitled to any lost profits because there are serious problems with Plaintiff's proof of causation. Plaintiff has not and cannot establish that but for Google's agreement with On Demand Books InstaBook would have made the same level of sales it made before the agreement. The shortcomings in Plaintiff's theory of damages for lost profits are discussed in detail in Google's motion for summary judgment. Doc. 104, pp 18-21. The Court agrees that each of these problems standing alone is sufficient to demonstrate that Plaintiff is not entitled to lost profits even if Plaintiff had established infringement. Lastly, with regard to Plaintiff's claim that he is entitled to a reasonable royalty, there is no evidence in the record upon which the Court could determine a reasonable royalty and therefore even if Plaintiff had established infringement he would not be entitled to recover a reasonable royalty.

[14] The Court is aware that there is evidence that Google had an Espresso Machine located at its California headquarters for six months pursuant to an equipment usage agreement. Doc. 105, Ex. 20, ¶15. Google did not use the Espresso Machine for any commercial purpose but rather provided it for use to volunteers to use during the lunch hour to print books for Google employees and visitors to use for free. *Id., Ex. 28.* As such, even assuming Plaintiff could establish that the Espresso Machine infringed the '890 Patent (which he has not) the mere fact that Google had a machine on the premises for non-commercial purposes, used only by volunteers, would not be sufficient to demonstrate that Google engaged in direct infringement of the '890 Patent.

of law. *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F. 3d 1293, 1303 (Fed. Cir. 2005). Thus, summary judgment of invalidity for indefiniteness is appropriate where one or more patent claims are "not amenable to construction" or "insolubly ambiguous." *Datamize, LLC v. Plumtree Software, Inc.,* 417 F. 3d 1342, 1347 (Fed. Cir. 2005). Summary judgment of invalidity for indefiniteness is not appropriate, however, where the "meaning of the claim is discernible, even thought the task may be formidable and the conclusion may be one over which reasonable persons will disagree." *Bancorp Servs., LLC v. Hartford Life Ins. Co.,* 359 F. 3d 1367, 1371 (Fed. Cir. 2004), *see also, Xerox Corp. v. 3Com Corp.,* 458 f. 3d 1310 (Fed. Cir. 2006).

Google argues that the "formatting" claims in twelve of the independent claims[15] are indefinite because the specification contains no corresponding structure, material or acts. Relying upon the expert opinion of their expert Google argues that the language of the "formatting means simply does not make sense and therefore would not have made any sense to a person of skill in the art at the time the patent was filed. Doc. 105. Ex. 18, § 4.1.3.

The question is whether the specification requiring a formatting means for "formatting the book's content into a book's distribution" is discernible. While there is certainly some lack of clarity in describing that the formatting of the book's content into a book distribution, the Court, nonetheless, concludes that the claim is not indefinite because no meaning can be ascribed to it. Rather – and as the Court discussed in construing the scope of the claim – the claim means that the information being

---

[15] Claims 1, 5, 6, 14, 20, 21, 25, 26, 54, 61, 68 and 75.

formatted and/or distributed is an electronic text file rather than scanned images of book pages. Indeed, the method of "formatting" discloses a method for allowing the reformatting of the size and type of fonts. Thus, distribution means for example to distribute information to the "printing means" regarding the size of each sheet of paper, the number of pages to print onto a sheet of paper, the ways of distributing the pages , and the designs of the printed mater. While reasonable persons might disagree about the meaning of the terms used in describing the "formatting means" the Court concludes that the description is not so ambiguous as to be considered indefinite. Accordingly, the Court concludes that Google's request for summary judgment on this issue is to be denied.

Turning lastly to Google's argument that the claims in the '890 Patent are anticipated by prior art, Google relies exclusively upon the reasons discussed by the Board of Patent Appeals and Interference in its decision during the appeal of the ruling in the reexamination of the '790 Patent. Doc. 105, Ex. 14. While the Board determined that various prior art including the article *On-Demand Printing: The Revolution in Digital and Customized Printing, 1995* by Howard M. Fenton and Frank J. Romano ("Fenton") and the article *Exploring IBM Print On Demand Technology, 1997,* by Jim Wallace ("Wallace") anticipated a number of the claims, the Board's decision concerned the '790 Patent and not the '890 Patent. Although the claims in the '890 Patent were found to be patentably indistinct from the claims in the '790 Patent, the Board's decision does not automatically invalidate the '890 Patent. Certainly, the same arguments could be raised in a reexamination to challenge the validity of the '890 Patent. Had the Board's decision related to the '890 Patent there would be no issue now that the '890 Patent is invalid for

among other reasons, a number of the claims were anticipated by the prior art. In this case, however, Google has elected not to provide any argument on the issue of invalidity other than to point the Court to the Board's decision. Ordinarily, the defense of anticipation based on the prior art under 35 U.S.C. § 102 is a question of fact. *IPXL Holdings, LLC v. Amazon.com, Inc.,* 430 F. 3d 1377, 1380 (Fed. Cir. 2005). Because Google has not argued nor explained how the claims in the patent-in-suit are anticipated by prior art – particularly Fenton and Wallace – the Court determines that it would be inappropriate to enter summary judgment on the issue of invalidity. To address the issue of invalidity without requiring Google to discuss the prior art and to discuss the legal implications of the Board's decision on the '890 Patent would require the Court to improperly speculate as to Google's arguments. Additionally, because Google has not provided detailed argument regarding the effect of prior art on the '890 Patent, Plaintiff also would be required to speculate as to the factual basis for Google's argument. Accordingly, while the Court recognizes that there may be meritorious arguments as to whether the claims of the '890 Patent were anticipated by prior art the Court declines to do so here in the absence of a detailed argument by Google.[16]

## IV.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that: (1) Defendant Google Inc.'s Motion for Summary Judgment, Doc. 104, should be **GRANTED** with regard to Plaintiff's claims for infringement but denied as to the defenses of

---

[16] The Court is aware that Google advised that it would be willing to submit supplemental briefing relating to the findings of the Board as to the claims in the '890 Patent. However, if Google had wished to provide supplemental briefing on the issue of invalidity it should have filed a motion requesting leave to do so. No such request was filed. Accordingly, the Court is required to resolve the motion for summary judgment based upon the record and arguments currently before the Court.

indefiniteness and invalidity; (2) Plaintiff's Amended Motion for Summary Judgment,

Doc. 109, should be **DENIED**, and; (3) judgment should be entered in favor of Google

Inc.

      **IN CHAMBERS**  this 29th  day of September  2013.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

      **A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**